OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiffs-Appellants, Alice and Richard Luther, appeal the decision of the Columbiana County Court of Common Pleas, that entered judgment for Defendant-Appellee, the Estate of Nicholas Skrinjar, after a jury trial and denied the Luthers' motion for a new trial. Alice was injured in an automobile accident and the parties did not dispute the defendant's liability, but the jury returned a verdict for the defendant. The weight of the evidence shows that the Luthers should receive some amount of compensation for their injuries and the trial court abused its discretion when it denied the motion for a new trial. Accordingly, its decision is reversed and this case is remanded for a new trial.
 Facts {¶ 2} On January 19, 2002, Alice was involved in a traffic accident caused by Skrinjar. Skrinjar died at the scene of the accident and Alice was taken to the hospital, where she was treated for physical injuries. She was released from the hospital the same day without complaining of any emotional distress.
 {¶ 3} Upon arriving at home from the hospital, Alice cried and had difficulty sleeping. A few days later, she reported her problems to her personal physician, who prescribed a sleeping aid and an antidepressant. Alice withdrew from her family and about a month after the accident her husband scheduled an appointment with a licensed counselor with experience treating people suffering with post-traumatic stress disorder, John Frisco. After his first meeting with Alice, he diagnosed her with that disorder, which is found in certain people who have seen an actual or near-death, calling her symptoms a "classic case" of that disorder. After Alice began ideating about and attempting suicide, he referred her to psychiatrists so she could be treated for severe depression.
 {¶ 4} Eventually, the Luthers filed a complaint sounding in negligence and loss of consortium against Skrinjar's estate. That lawsuit also named Skrinjar's parents as defendants in an attempt to get them to open Skrinjar's estate. That estate was eventually opened and the Luthers voluntarily dismissed their claims against Skrinjar's parents.
 {¶ 5} The Luthers moved for partial summary judgment on the issue of Skrinjar's liability and the trial court granted that motion. It specifically concluded that Skrinjar breached a duty between he and Alice and that the only issues left for trial were proximate cause and damages.
 {¶ 6} The case went to a jury trial and the jury entered a judgment for Skrinjar. The Luthers timely moved for a new trial, arguing that the jury's verdict was, among other things, both against the weight of the evidence and influenced by passion or prejudice. The trial court denied this motion, concluding that the Luthers failed to prove that their injuries were the proximate result of the accident.
 Evidentiary Issues {¶ 7} In their third assignment of error, the Luthers raise certain evidentiary issues which we will address before addressing her first two assignments of error. In that assignment of error, the Luthers argue:
 {¶ 8} "The trial court committed error prejudicial to the Plaintiffs in its rulings on evidentiary issues."
 {¶ 9} In particular, the Luthers claim that the trial court erred by preventing Alice from testifying about what she saw and heard at the scene of the accident. Alice claims that she heard that Skrinjar was dead and that this prompted an emotional response which would help prove that Alice suffered from post-traumatic stress disorder. The trial court concluded that the testimony was hearsay, but the Luthers argue it was not since those statements were not offered to prove the truth of the matters asserted.
 {¶ 10} Hearsay evidence is generally inadmissible. See Evid. R. 802. `"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). Decisions regarding the admissibility of this type of evidence are within the broad discretion of the trial court and will be upheld absent an abuse of that discretion. Beard v. Meridia Huron Hosp., 106 Ohio St.3d 237,2005-Ohio-4787, ¶ 20. Furthermore, this court cannot disturb the trial court's decision "unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice." Id. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d217, 219.
 {¶ 11} In this case, we cannot reverse the trial court's ruling on the admissibility of this evidence. The trial court sustained Skrinjar's objection when Alice was about to give someone else's out-of-court statement, afraid that the Luthers would use the statement to prove the truth of the matter asserted. At a sidebar, the Luthers' counsel told the trial court that he intended to use the statement that "Skrinjar is dead" to demonstrate why Alice had such an emotional response. He claimed that it was irrelevant whether Skrinjar was actually dead; what was relevant was Alice's response to the statement, regardless of its truth.
 {¶ 12} Counsel's argument to the trial court demonstrates why the Luthers were not prejudiced by the exclusion of this evidence. The important point they were trying to prove was not the content of the statements; rather, they were trying to substantiate the seriousness of Alice's emotional response. It was not necessary to introduce the statement that "Skrinjar is dead" to prove that point. For instance, counsel could have asked Alice if she heard anyone say anything after they tried to arouse Skrinjar, while instructing her not to say what she heard. Counsel then could have asked her what she believed after that statement and how she emotionally responded after hearing the statement. Nothing in the trial court's decision on the admissibility of that statement prevented the Luthers from introducing the evidence which they felt was critical to their case.
 {¶ 13} Since the trial court's decision did not affect the Luthers' substantial rights, its decision in this regard is not reversible. Accordingly, the arguments in the Luthers' third assignment of error are meritless.
 Manifest Weight {¶ 14} In their first assignment of error, the Luthers argue:
 {¶ 15} "The trial court erred by permitting and letting stand a verdict for the Defendant in a case of uncontested liability and damages."
 {¶ 16} The Luthers contend both that the jury's verdict was not supported by the evidence since the trial court had already found Skrinjar liable and that there were aspects of the Luthers' injuries which were undisputed. Accordingly, they believe the trial court abused its discretion when it denied their motion for a new trial.
 {¶ 17} "A trial court is afforded wide discretion when ruling on a Civ. R. 59 motion for a new trial and will be reversed only upon a showing that the trial court abused that discretion." Allied Erecting Dismantling Co., Inc. v. Youngstown, 151 Ohio App.3d 16,2002-Ohio-5179, at ¶ 61, citing Rohde v. Farmer (1970),23 Ohio St.2d 82, paragraph one of the syllabus. "Abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 0hioSt.3d217, 219. The discretionary power to grant a new trial should be only exercised in exceptional cases. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-0052. "No judgment resulting from a trial by jury shall be reversed [by the court of appeals] on the weight of the evidence except by the concurrence of all three judges hearing the cause." Section 3(B)(3), Article IV, Ohio Constitution.
 {¶ 18} Civ. R. 59(A)(6) allows a trial court to grant a new trial if "[t]he judgment is not sustained by the weight of the evidence." When ruling on a motion for a new trial under Civ. R. 59(A)(6), the trial court must "weigh the evidence and pass on the credibility of the witnesses; not in the substantially unlimited sense that such weight and credibility is passed on originally by the jury, but in the more restricted sense of whether it appears to the trial court that a manifest injustice has been done, and that the verdict is against the manifest weight of the evidence." Rohde at paragraph three of the syllabus. "[T]he trial court's role when determ ining whether a jury's verdict is against the manifest weight of the evidence is to ensure, in its supervisory capacity, against a miscarriage of justice." Bobb ForestProducts, Inc. v. Morbark Industries, Inc.,151 OhioApp.3d 63, 2002-Ohio-5370, at ¶ 65.
 {¶ 19} Since the trial court has "seen and heard the witnesses" and experienced "the surrounding circumstances and atmosphere of the trial," an "appellate court should view the evidence favorably to the trial court's action rather than to the original jury's verdict" when reviewing a trial court's decision to grant a new trial based on Civ. R. 59(A)(6). Rohde at 94. A trial court may not order a new trial based simply on a difference of opinion between it and the jury. SeeVerbon v. Pennese (1982), 7 Ohio App.3d 182, 183; Poske v. MergI (1959),169 Ohio St. 70, 73-74. The trial court's job is not to judge the credibility of the evidence, but to judge whether the evidence has a "semblance of credibility." Verbon at 183.
 {¶ 20} In this case, the trial court granted partial summary judgment to the Luthers, concluding that Skrinjar breached a duty between he and Alice when he caused the accident. The trial court specifically left the issues of proximate cause and damages for trial.
 {¶ 21} On appeal, the Luthers claim that they introduced undisputed evidence that Alice sustained damages and that Skrinjar's counsel conceded that these damages were proximately caused by the accident. We agree.
 {¶ 22} Skrinjar's counsel conceded that the accident proximately caused Alice's physical injuries. During his opening statement, counsel stated, "Mrs. Luther suffered minor physical injuries. She was taken to the emergency room at East Liverpool, complained of knee pain, neck pain, and, I believe, a nose injury. She was x-rayed, treated, and released." Then, during closing arguments, Skrinjar's counsel made the following statements:
 {¶ 23} "In order to give damages, [the plaintiff's counsel] has to prove by a preponderance of the evidence that his client was injured as a proximate result of this automobile accident. And the judge will instruct you on that. We're not saying that Nicholas wasn't negligent. He caused the accident. But what we're saying is, did the accident cause all of Mrs. Luther's injuries?"
 {¶ 24} Skrinjar's counsel went on to argue that the Luthers did not prove that the accident proximately caused her emotional injuries.
 {¶ 25} Furthermore, the evidence given at trial demonstrates that Alice's physical injuries were the proximate result of the automobile accident. At the scene of the accident, emergency medical personnel stabilized Alice and transferred her to the hospital in an ambulance. At the hospital, Alice was treated for physical injuries to her head, neck, and knees. The costs of Alice's transport to the hospital and her treatment at the hospital totaled $1,762.50.
 {¶ 26} At trial Skrinjar never argued that Alice's physical injuries were not the proximate result of the accident; rather, he stated the opposite. Furthermore, the evidence indicates that her injuries were the proximate result of the accident. Finally, there is no dispute regarding either the amount of the damages for those physical injuries or the necessity of the treatment for those injuries. "Proof of the amount paid or the amount of the bill rendered and of the nature of the services performed constitutes prima facie evidence of the necessity and reasonableness of the charges for medical and hospital services."Wagner v. McDaniels (1984), 9 Ohio St.3d 184, paragraph one of the syllabus. Accordingly, the trial court abused its discretion when it refused to grant a new trial because of this issue.
 {¶ 27} Of course, the Luthers' main claim is based on Alice's emotional injuries, not her physical injuries, and the main issues litigated at trial were whether she was actually suffering emotional injuries and whether the accident proximately caused those emotional injuries.
 {¶ 28} In this case, there can be little dispute about whether Alice is actually suffering an emotional injury. At trial, both of the Luthers' experts were asked about the possibility that Alice was malingering. Each expert firmly stated that they saw no evidence of malingering. Accordingly, the real question is whether the trial court abused its discretion when it concluded that the weight of the evidence does not show that the accident was the proximate cause of these injuries.
 {¶ 29} In this case, the Luthers did not elicit any expert testimony stating that Alice's accident with Skrinjar was the proximate cause of her emotional injuries. However, the evidence in the record demonstrates that the accident triggered her emotional injuries.
 {¶ 30} The record shows that Alice led a normal, happy life prior to the accident. Both Richard and Alice testified that prior to the accident Alice had been a happy, positive person with an enthusiasm for life. This testimony was supported by that of Chad Deering, a friend of the family, who testified that Alice had been "very, very outgoing. Super, super nice. * * * A lot of fun, "and Ellen Mason, Richard's sister, who testified that Alice was a "welcoming," fun-loving," "competent and gracious person" who led a "full life." Finally, Alice's former employer testified that she had been a reliable employee who was good with people.
 {¶ 31} Each of these witnesses testified that Alice's demeanor was very different after the accident. After being released from the hospital, Alice went home and cried. When Alice tried to sleep that night, she kept having nightmares about the accident which were so bad that she did not sleep for more than fifteen minutes at a time. She did not return to her work as a realtor for a month and a half after the accident because she was so upset that she would not be able to deal with her clients. Shortly after the accident, Alice visited her doctor, who prescribed a sleeping aid and antidepressant. Alice testified that she thinks of the accident and Skrinjar's death "every day" and feels that she, not Skrinjar should have died in the accident.
 {¶ 32} A little over one month after the accident, Alice began seeing John Frisco, a licensed therapist who specialized in post-traumatic stress disorder. Before seeing Frisco, Alice was withdrawing from her family and Richard contacted Frisco out of concern for his wife. Frisco diagnosed Alice with post-traumatic stress disorder after his first meeting with her, calling her case a "classic" case of that disorder, which he testified is found in certain people who have seen an actual or near-death. Frisco testified that he was told that the trauma which led Alice to him was her accident with Skrinjar and Skrinjar's death as a result of that accident. He further stated that he did not believe that Alice suffered from any psychological condition prior to the accident. He further believed that if she had suffered from such a condition, then the accident would have aggravated this condition.
 {¶ 33} Eventually, Alice began to express that she had been thinking about suicide and even tried to take her own life. After this, Frisco recommended that Alice see a psychiatrist and that she be hospitalized. Alice first saw Dr. Nefertiti Labib, but quit
seeing her after two visits. Later, Alice saw Dr. Pamela Drake, who treated Alice for severe depression, which was a complication of her post-traumatic stress disorder. Dr. Drake did not know of any other cause of Alice's depression other than events which caused her post-traumatic stress disorder. Dr. Drake felt that Alice may have had some personality traits which exacerbated the symptoms of her post-traumatic stress disorder and depression.
 {¶ 34} After the accident, Alice has had problems dealing with people. This made it difficult for her to return to work. But it has also decreased her interest in participating in many activities in which she used to participate, such as boating and traveling. She has no more enthusiasm for life. She also feels detached and estranged from others, and is anxious about everything. This significantly impairs her ability to function socially. Deering, a formerly close family friend, says that he has seen Alice "[v]ery, very rarely" since the accident and that she has "obviously changed." Mason testified that Alice has been "more withdrawn and depressed" and "less capable of handling" things after the accident. Alice's former employer testified that since the accident, Alice has been "depressed" and that "she had changed" from the moment of the accident "and has never changed back."
 {¶ 35} Skrinjar made two separate types of arguments attacking this evidence. First, he argued during closing argument that Alice's emotional injuries were aggravated by the type of treatment she was receiving. However, this is an argument about the amount of damages to which the Luthers are entitled, not over whether Alice's emotional injuries were proximately caused by the accident. Accordingly, this theory of the case does not support the jury's verdict.
 {¶ 36} Skrinjar's second argument is that Alice's emotional injuries were actually caused by other events, not the car accident. For instance, Frisco testified that a person could experience post-traumatic stress disorder after having a gun held to their head while being threatened for their life. In a prior marriage, Alice's ex-husband was abusive toward her and held a gun to her head and threatened to kill her. Furthermore, Alice's first husband had been physically abusive toward her and her 15 month-old daughter. However, these events all took place years before the accident and there is no indication in the record that Alice suffered any lasting psychological damage from these events, so Skrinjar's argument with regard to these events causing Alice's current problems holds little weight.
 {¶ 37} Skrinjar next points to other, more recent events which could have caused much of Alice's distress. For example, Richard was involved in a car accident which Alice, for a time, believed might be serious, Alice and Richard had financial pressures as a result of her inability to work as often, and they had issues with regard to the rearing of their children. Finally, there was marital tension between Alice and Richard after the accident as a result of her emotional state. But these arguments are reasons why the jury should reduce a damage award to the Luthers, not a reason to award no damages to them.
 {¶ 38} The record in this case contains overwhelming evidence showing that Alice has suffered emotionally after the accident with Skrinjar. There may be some question regarding the extent of her injury and, therefore, the amount of damages to which she is entitled. However, there is no question that she did suffer an emotional injury and that she should be compensated for that injury. Accordingly, the trial court abused its discretion when it denied the Luthers' motion for a new trial. The Luthers' first assignment of error is meritorious.
 Passion Prejudice {¶ 39} In their second assignment of error, the Luthers argue:
 {¶ 40} "The trial court erred by failing to address or remedy misconduct of counsel for Defendant, resulting in a verdict which appears to have been given under the influence of passion or prejudice."
 {¶ 41} In this assignment of error, the Luthers argue an alternative basis for granting a new trial. Given our resolution of the Luthers' first assignment of error, this assignment of error is moot.
 Conclusion {¶ 42} The Luthers have shown that the trial court erred when it overruled their motion for a new trial because the jury's verdict was against the manifest weight of the evidence. The record shows that Alice suffered physical injuries in the accident for which she received treatment and she should be compensated for these damages. Furthermore, the record shows that the accident was the proximate cause of at least some of Alice's emotional injuries. The trial court abused its discretion when it denied Alice's motion for a new trial. Accordingly, the judgment of the trial court is reversed and this case remanded for a new trial.
Donofrio, P.J., concurs in judgment. See attached concurring opinion. Vukovich, J., concurs.